UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MID-CITY NEIGHBORHOOD ORGANIZATION, ET AL. | CIVIL ACTION |
| VERSUS | NO. 18-3705 |
| GUSMAN, ET AL. | SECTION "R" (4) |

# ORDER AND REASONS

Plaintiffs Mid-City Neighborhood Organization, Orleans Parish Prison Reform Coalition, Voice of the Experienced, Women with a Vision, Yvette Thierry, and Don Everard move to remand this matter to the Orleans Parish Civil District Court on the ground that removal was improper under the federal officer removal statute.[1] Because quasi-judicial immunity is not a colorable defense when a federal court officer is sued only in his official capacity, the Court finds that the federal officer removal statute is inapplicable in this action and grants plaintiffs' motion.

---

[1] R. Doc. 12.

## I. BACKGROUND

### A. Plaintiffs' Complaint

This case arises from the Orleans Parish Sheriff's Office's (OPSO) alleged use of a temporary detention center.[2] Plaintiffs allege that a 2011 ordinance by the New Orleans City Council mandated that a proposed new jail facility in Orleans Parish could not exceed 1,438 beds.[3] The ordinance allegedly also required the city to demolish or decommission a temporary detention center within 18 months after the new jail opened.[4] Plaintiffs state that the temporary detention center was constructed to house inmates while the new jail facility was built.[5] Plaintiffs assert that the new 1,438-bed jail facility—the Orleans Justice Center—became fully operational in October 2015.[6] The city ordinance thus allegedly required that the temporary detention center be decommissioned or demolished by April 2017.[7] But plaintiffs allege that on June 29, 2017, the New Orleans Department of Safety and Permits issued a Temporary Occupancy Certificate allowing the OPSO to continue housing inmates at the temporary detention center.[8] Plaintiffs

---

[2] R. Doc. 1-1.
[3] *Id.* at 10 ¶¶ 48-49.
[4] *Id.* at 11 ¶¶ 52-53.
[5] *Id.* ¶ 54.
[6] *Id.* ¶ 56.
[7] *Id.* ¶ 57.
[8] *Id.* ¶ 58.

allege that the OPSO "began housing inmates in [the temporary detention center] beginning in July 2017."[9]

On March 14, 2018, plaintiffs filed the present lawsuit in the Civil District Court for the Parish of Orleans.[10] Plaintiffs allege that the New Orleans Department of Safety and Permits issued the Temporary Occupancy Certificate *ultra vires* and that the OPSO's continued use of the temporary detention center violates the city ordinance.[11] Plaintiffs seek (1) a declaratory judgment that the Temporary Occupancy Certificate was issued *ultra vires*; (2) an injunction enjoining defendants from violating the city ordinance; (3) reasonable attorneys' fees and all costs plaintiffs incur in the proceeding; and (4) any other general and equitable relief the Court may deem appropriate.[12] Plaintiffs named as defendants (1) Sheriff Marlin Gusman, in his official capacity as Sheriff of the Parish of Orleans; (2) Darnley R. Hodge, in his official capacity as the Compliance Director of the Orleans Parish Prison (Compliance Director), (3) Jared E. Munster, in his official capacity as

---

9     *Id.* ¶ 59. Plaintiffs do not explain whether the OPSO continued to house inmates at the temporary detention center from April 2017 until the Department of Safety and Permits issued the Temporary Occupancy Certificate in late June 2017.
10     *Id.* at 1.
11     *Id.* at 11 ¶¶ 58-59.
12     *Id.* at 15.

Director of the City of New Orleans Department of Safety and Permits, and (4) the City of New Orleans.[13]

### B. Defendants' Notice of Removal

On April 9, 2018, defendants removed the case to this Court.[14] Defendants assert that removal is proper under the federal officer removal statute because Hodge, in his role as the court-appointed Compliance Director, is an "officer of the courts of the United States."[15] *See* 28 U.S.C. § 1442(a)(3).

Hodge's role as the Compliance Director stems from a Stipulated Order in *Jones v. Gusman*, No. 12-859. In *Jones*, individuals incarcerated at the Orleans Parish Prison filed a class action lawsuit against Sheriff Gusman alleging they were subject to unconstitutional conditions of confinement. No. 12-859 (E.D. La. Apr. 2, 2012). In June 2013, the court approved a Consent Judgment between plaintiffs, Sheriff Gusman, and intervenor the United States. *Jones*, No. 12-859 (E.D. La. June 6, 2013). The Consent Judgment set forth policies and procedures that the Orleans Parish Prison must adopt to protect the constitutional rights of prisoners. *Id.* at 5. The parties were ordered to select a monitor jointly to oversee implementation of

---

[13] *Id.* at 1, 9 ¶ 42
[14] R. Doc. 1.
[15] *Id.* at 6.

4

the agreement. *Id.* at 44. In April 2016, the plaintiffs and the United States moved for a court-appointed receiver to take control of the Orleans Parish jail facilities, arguing that Sheriff Gusman had failed or refused to comply with the Consent Judgment. *Jones*, No. 12-859 (E.D. La. Apr. 25, 2016). In June 2016, the parties agreed to a Stipulated Order that created the position of Compliance Director. *Jones*, No. 12-859 (E.D. La. June 21, 2016). In January 2018, after the first Compliance Director resigned, the court appointed Hodges as the Acting Compliance Director, effective February 19, 2018. *Jones*, No. 12-859 (E.D. La. Jan. 29, 2018).

Plaintiffs have moved to remand this proceeding to the Orleans Parish Civil District Court.[16] Defendants oppose the motion.[17]

## II. LEGAL STANDARD

The federal officer removal statute provides, in relevant part:

(a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending: . . .

(3) Any officer of the courts of the United States, for or relating to any act under color of office or in the performance of his duties.

---

16   R. Doc. 12.
17   R. Doc. 21.

5

28 U.S.C. § 1442(a)(3). The Supreme Court has explained that the purpose of the federal officer removal statute is to protect the lawful activities of the federal government from undue state interference. *See Willingham v. Morgan*, 395 U.S. 402, 406 (1969). Because the federal government "can act only through its officers and agents," it has a strong interest in ensuring that the states do not hinder those officers in the execution of their duties. *Id.* (quoting *Tennessee v. Davis*, 100 U.S. 257, 263 (1880)). If federal officers acting within the scope of their authority "can be arrested and brought to trial in a State court, for an alleged offense against the law of the State, yet warranted by the Federal authority they possess, and if the general government is powerless to interfere at once for their protection . . . the operations of the general government may at any time be arrested at the will of one of its members." *Id.* (quoting *Davis*, 100 U.S. at 263); *see also Watson v. Philip Morris Cos.*, 551 U.S. 142, 148 (2007) ("As Senator Daniel Webster explained [in 1833], where state courts might prove hostile to federal law, and hence to those who enforced that law, the removal statute would 'give a chance to the [federal] officer to defend himself where the authority of the law was recognized.'") (quoting 9 Cong. Deb. 461 (1833)).

Because of its broad language and unique purpose, the federal officer removal statute has been interpreted to operate somewhat differently than

the general removal provision. Unlike the general removal statute, which must be "strictly construed in favor of remand," *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002), the federal officer removal provision must be liberally interpreted. *Watson*, 551 U.S. at 147. Also unlike the general removal provision, there is no requirement in the federal officer removal provision that the district court have original jurisdiction over the plaintiff's claim. *See Jefferson County, Alabama v. Acker*, 527 U.S. 423, 430-31 (1999). A case against an officer of the federal courts may be removed even if a federal question arises as a defense rather than as a claim apparent from the face of the plaintiff's well-pleaded complaint. *Id.*

Accordingly, in order to qualify for removal, an officer of the federal courts must (1) "raise a colorable federal defense," and (2) "establish that the suit is '*for* an act under color of office.'" *Id.* at 431 (emphasis in original) (quoting 28 U.S.C. § 1442(a)(3)). Courts have construed the colorable defense requirement broadly, "recognizing that 'one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court.'" *Id.* (quoting *Willingham*, 395 U.S. at 407). Courts therefore "do not require the officer virtually to 'win his case before he can have it removed.'" *Id.* (quoting *Willingham*, 395 U.S. at 407). As in all cases,

7

the party asserting federal jurisdiction in a case removed under Section 1442 bears the burden of establishing that jurisdiction exists. *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 398 (5th Cir. 1998).

III. **DISCUSSION**

Defendants argue that removal is proper because Hodge may raise the colorable federal defense of quasi-judicial immunity.[18] Judges are protected by absolute immunity in the exercise of their judicial functions. *See Butz v. Economou*, 438 U.S. 478, 509 (1978); *Imbler v. Pachtman*, 424 U.S. 409, 422–23 (1976); *Pierson v. Ray*, 386 U.S. 547, 554 (1967). The Supreme Court has also extended absolute immunity to certain other "quasi-judicial" administrative officers who perform functions closely associated with the judicial process. *See Butz*, 438 U.S. at 513.

Plaintiffs argue in their motion to remand that the defense of quasi-judicial immunity is unavailable to Hodge because their complaint seeks only injunctive and declaratory relief.[19] Plaintiffs cite *Holloway v. Walker*, 765 F.2d 517, 525 (5th Cir. 1985)—which involved a claim brought under 42

---

18   R. Doc. 1 at 7; R. Doc. 21 at 8-14.
19   R. Doc. 12-1 at 6. Plaintiffs do not mention in their motion that they also seek "reasonable attorney fees and all costs" incurred in the proceedings, in addition to injunctive and declaratory relief. *See* R. Doc. 1-1 at 15. But the Court's decision does not turn on the nature of the relief plaintiffs seek.

8

U.S.C. § 1983—for the proposition that this defense is only applicable to claims for damages.[20] Defendants respond that *Holloway* and the Supreme Court case it relied upon, *Pulliam v. Allen*, 466 U.S. 522 (1984), were "superseded" by the Federal Court Improvement Act of 1996 (FCIA).[21] The FCIA amended 42 U.S.C. § 1983 to establish that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." Pub. L. No. 104-317, 110 Stat. 3847.

But neither party addresses controlling precedent establishing that even after the FCIA, the defense of quasi-judicial immunity is not available to a defendant sued only in his official capacity, regardless of whether the suit is for monetary damages, injunctive relief, or declaratory relief. *See Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 483 (5th Cir. 2000) ("[D]efenses such as absolute quasi-judicial immunity, that only protect defendants in their individual capacities, are unavailable in official-capacity suits."); *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991) (holding that "officials sued in their personal capacities, unlike those sued in their official

---

[20] R. Doc. 12-1 at 6.
[21] R. Doc. 21 at 10.

9

capacities, may assert personal immunity defenses"); *Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985) (stating that "[i]n an official capacity action . . . [immunity] defenses are unavailable," and that "[t]he only immunities that can be claimed . . . are forms of sovereign immunity that the entity . . . may possess").

In *Turner*, which was decided four years after the FCIA was enacted, the Fifth Circuit addressed whether members of the Houma Municipal Fire and Police Service Board could assert quasi-judicial immunity for their adjudicative actions as a defense to the plaintiff's § 1983 claim. 229 F.3d at 479-81. The plaintiff alleged that the Board and its members discriminated against him on the basis of his race, and he sought compensatory and punitive damages, as well as injunctive relief and a declaration that the defendants' actions violated his constitutional rights. *Id.* at 481. The plaintiff made clear in an interrogatory that he was asserting only official-capacity claims against the Board members. *Id.*

The Fifth Circuit noted that courts often discuss personal immunity defenses like quasi-judicial immunity "without clearly articulating to whom and in which capacity those defenses applied." *Id.* at 485. But the court held that a "precise reading" of Fifth Circuit case law indicated that the defense of quasi-judicial immunity was not available to defendants sued only in their

official capacities. *Id.* at 484. This rule is rooted in the fact that "official capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Id.* at 483 (quoting *Graham*, 473 U.S. at 165). Accordingly, "a § 1983 suit naming defendants only in their 'official capacity' does not involve personal liability to the individual defendant," rendering a personal immunity defense inapplicable. *Id.* Courts in this circuit have consistently applied *Turner* to find that personal immunity defenses cannot be asserted in the context of an official-capacity claim. *See, e.g.*, *Stallworth v. Slaughter*, 436 F. App'x 337, 340 (5th Cir. 2011) ("[U]nder Supreme Court case law, the personal defense of qualified immunity does not apply to official-capacity claims."); *Cain v. City of New Orleans*, 184 F. Supp. 3d 379, 391 n.54 (E.D. La. 2016) (in the context of claims against state judicial officers, noting that "[a]bsolute immunity does not apply to claims against a defendant in his official capacity").

Here, the case caption in plaintiffs' petition explicitly states that Hodge is sued only in his official capacity as the Compliance Director.[22] And when viewing plaintiffs' petition as a whole, it is clear the real party in interest is the entity Hodge oversees—the Orleans Parish Prison. The only relief plaintiffs specifically seek from Hodge is an injunction enjoining him "and

---

[22] R. Doc. 1-1 at 1.

11

the Orleans Parish Sheriff's Office" from continuing to violate the city ordinance.[23] Plaintiffs' action is thus plainly an attempt to stop the Orleans Parish Prison and OPSO from taking certain actions, which indicates the suit is against Hodge in his official, rather than personal, capacity. *Graham*, 473 U.S. at 165-66 (official-capacity suits "represent only another way of pleading an action against an entity of which an officer is an agent" (quoting *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 n.5 (1978))). Removal is therefore improper because Hodge is sued only in his official capacity and thus cannot raise the federal defense of quasi-judicial immunity. *See Turner*, 229 F.3d at 481-83; *Graham*, 473 U.S. at 165-67.

Granting plaintiffs' motion to remand is consistent with the Court's responsibility to interpret the officer removal statute broadly. *See Willingham*, 395 U.S. at 407. While the test for removal under § 1442(a)(3) is broader than the test for quasi-judicial immunity, *see id.* at 405, a defendant cannot remove a case under the statute by simply asserting a possible federal defense that is facially inapplicable. *See Mesa v. California*, 489 U.S. 121, 133 (1989) (ruling that the officer removal statute did not justify removal when defendants "have not and could not present an official immunity defense" to their criminal prosecution). The Supreme Court has

---

[23] *Id.* at 15.

12

refused to "divorce the federal official immunity defense from the pleadings required to allege it," because doing so would in effect "transform those pleading requirements into an independent basis for jurisdiction." *Id.* Where, as here, defendants fail to present a federal immunity defense that could conceivably apply, it is proper to grant plaintiffs' motion to remand.

Lastly, defendants note that the Ninth Circuit affirmed a district court's exercise of jurisdiction in an analogous case brought against a court-appointed receiver for the California Department of Corrections and Rehabilitation.[24] *See Med. Dev. Int'l v. Cal. Dep't of Corr. & Rehab.*, 585 F.3d 1211 (9th Cir. 2009). In *Medical Development International*, the plaintiff's only remaining claims against the receiver were against him in his official capacity. *Id.* at 1219. The Ninth Circuit affirmed the district court's exercise of jurisdiction, but ultimately ruled that under the particular circumstances of that case, the receiver was not entitled to the defense of judicial immunity. *Id.* at 1221-22. The Ninth Circuit's opinion implied that there could be times under that Circuit's precedent where a court officer could employ the defense of judicial immunity when he is sued only in his official capacity. But this Court is bound by the Fifth Circuit's explicit ruling that the defense of quasi-judicial immunity is not available to defendants

---

[24] R. Doc. 21 at 14.

13

sued only in their official capacities. *Turner*, 229 F.3d at 483. And when clear precedent bars a defendant from raising a defense, that defense is not "colorable" for the purposes of the officer removal statute. *Mesa*, 489 U.S. at 133.

Because defendants' notice of removal fails to state a colorable federal defense, removal under 28 U.S.C. § 1442(a) is improper.

### IV.  CONCLUSION

For the foregoing reasons, plaintiffs' motion to remand is GRANTED.

New Orleans, Louisiana, this __5th__ day of October, 2018.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

14